UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:15-CV-00856-TBR

BRENTON WOMBLES, *et. al.*, PLAINTIFFS

v.

THE CITY OF MT. WASHINGTON, KY., *et. al.*, DEFENDANTS

**MEMORANDUM OPINION**

This matter is before the Court on three pending motions. First, Defendants, the City of Mt. Washington, Kentucky ("the City") and Mayor Barry Armstrong, individually and in his capacity as Mayor, filed a motion for summary judgment. [DN 45.] Plaintiffs responded. [DN 50.] Defendants replied. [DN 53.] Second, Plaintiffs Brenton Wombles and Aaron Almon filed a motion for partial summary judgment. [DN 46.] Defendants responded. [DN 49.] Plaintiffs replied. [DN 52.] Third, Plaintiffs filed a motion *in limine* seeking the exclusion of various pieces of evidence. [DN 62.] Defendants responded. [DN 63.] Fully briefed, these matters are now ripe for adjudication. For the reasons stated herein, Defendants' motion for summary judgment [DN 45] is **GRANTED**, Plaintiffs' motion for partial summary judgment is [DN 46] **DENIED**, and Plaintiffs' motion *in limine* [DN 62] is **DENIED AS MOOT**. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

BACKGROUND

This action arises out of Defendants' denial of Plaintiffs' applications for business licenses on the basis of the following City Ordinance (the "Ordinance"):

§ 110.03 ISSUANCE OF BUSINESS LICENSE; STANDARDS FOR ISSUANCE.

1

\*\*\*

 (B) Business licenses shall be issued unless there is tangible evidence that the conduct of the applicant's business would pose a substantial threat to the public health, safety, morals, or general welfare.  In particular, tangible evidence that the applicant:

  (1) Has been convicted of a crime o[f] moral turpitude; or

  (2) Has made willful misstatements in the application; or

  (3) Has committed prior violations of ordinances pertaining to itinerant merchants, peddlers, solicitors, and the like; or

  (4) Has committed prior fraudulent acts; or

  (5) Has a record of continual breaches of solicited contracts; or

  (6) Has an unsatisfactory moral character.  Will constitute valid reasons for disapproval of an application.

Mt. Washington, KY., Code of Ordinances § 110.03 (2004).

 Defendants admit the basic facts as set forth in Plaintiffs' Complaint as true. [DN 45-1 at 2.] Plaintiff Wombles filed Articles of Organization for his business, Best Deals, LLC ("Best Deals") with the Kentucky Secretary of State on July 22, 2015. [DN 1 at 3.] Best Deals, a retail store selling general merchandise, opened for business on October 20, 2015. [*Id.*] A ribbon-cutting ceremony was held on November 3, 2015 and Defendant Mayor Armstrong and other citizens of Mt. Washington attended. [*Id.*] Soon thereafter, however, on November 6, 2015, Mike Bowen, a building inspector for the City, informed Wombles that he had failed to obtain a business license from the City to operate Best Deals. [*Id.*] Bowen provided a copy of the business license application form to Wombles, but the application made no mention of a criminal background check. [*Id.*]

 On or around November 9, 2015, City police, including a Sgt. Huffman, went to Best Deals and requested to see the business license for Best Deals. [*Id.* at 4.] Wombles stated that he

was in the process of filling out the application, but police informed Wombles that he did not have the correct form, and advised Wombles that he had to close Best Deals for operating without the requisite business license. [*Id.*] That same day, the City Clerk provided Wombles with another business license application which was the same as the first with the exception of a footnote indicating that a criminal background check was required. [*Id.*]

Upon learning of the criminal background check requirement, Wombles, who has a felony conviction on his record, filed a Corporate Resolution transferring ownership of Best Deals to Plaintiff Almon, who has no criminal convictions on his record. [*Id.* at 3.] At the time these events occurred, Wombles and Almon were in a same-sex relationship, lived together, and operated Best Deals together. [*Id.* at 3–4.] On November 10, 2015, Almon filled out the new business license application and attempted to file it with the City Clerk, but was told his background check had to be completed before the application could be filed. [*Id.* at 4–5.]

Almon obtained a background check and submitted it along with his application on November 12, 2015. [*Id.* at 5.] Almon was advised that Sgt. Huffman had to sign off on his application before it could be sent to a City Committee for review. [*Id.*] Plaintiffs spoke with Sgt. Huffman on or around November 13, 2015, and he indicated that Plaintiffs could not operate Best Deals if they had criminal convictions. [*Id.*] Plaintiffs then told Sgt. Huffman about the Corporate Resolution, and Sgt. Huffman stated that if the Corporate Resolution established that Almon was the business owner, he would sign off on Almon's application to be sent to the City Committee. [*Id.*] But on November 17, 2015, Mayor Armstrong told Wombles that he could not operate Best Deals due to his felony conviction. [*Id.* at 6.] When Wombles explained that Almon was the owner of Best Deals, Mayor Armstrong stated that Almon also could not operate Best Deals because of his "association" with Wombles. [*Id.*]

3

Plaintiffs brought suit on November 25, 2015. Wombles claims that the Ordinance is unconstitutional as failing to withstand rational basis review under the Equal Protection Clause of the Fourteenth Amendment. [*Id.* at 7.] Almon alleges violations of both his First and Fourteenth Amendment rights, claiming that the City applied the Ordinance to deny him a business license on the basis of his association with Wombles and on the basis of his sexual orientation. [*Id.* at 7–9.] Almon alleges that intermediate scrutiny applies to both of his claims because the Ordinance operated to deny him a business license on the basis of gender. [*Id.*]

Plaintiffs requested an injunction prohibiting Defendants from denying Plaintiffs a business license to operate Best Deals, a declaratory judgment that the Ordinance is unconstitutional, and compensatory and punitive damages. [*Id.* at 7–9; 11–12.][1] The parties subsequently entered an Agreed Order permitting Plaintiffs to operate Best Deals during the pendency of this action. [DN 20.] Defendants moved for summary judgment on all of Plaintiffs' claims, while Plaintiffs moved for partial summary judgment solely on Wombles' claim that the Ordinance is unconstitutional under the Fourteenth Amendment to the U.S. Constitution.

## STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th

---

[1] Though Plaintiffs originally brought state law claims as well, Plaintiffs have since abandoned those claims. [DN 50 at 1 n.1.]

4

Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

When the parties have filed competing motions for summary judgment, as is the case here, the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Hensley v. Grassman*, 693 F.3d 681, 686 (6th Cir. 2012) (quoting *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994)). The moving party must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the nonmovant's claim or defense. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex Corp.*, 477 U.S. at 324).

## DISCUSSION

### A. Claims Against Local Government Act

Defendants first move for summary judgment on immunity grounds, specifically arguing that the City is immune from suit under Kentucky's Claims Against Local Governments Act (CALGA), KRS §§ 65.200–65.2006. [DN 45-1 at 7.] Though Plaintiffs failed to respond to this argument in their response [*see* DN 50], the Court finds that CALGA is confined to immunity from actions in tort, and therefore does not apply to the constitutional claims at issue in this action.

CALGA applies to "[e]very action in tort against any local government in this Commonwealth," KRS § 65.2001(1), and provides, in part, that

> Notwithstanding KRS 65.2001, a local government shall not be liable for injuries or losses resulting from:
>
> \*\*\*
>
> (3) Any claim arising from the exercise of judicial, quasi-judicial, legislative or quasi-legislative authority or others, exercise of judgment or discretion vested in the local government, which shall include by example, but not be limited to:
>
> (a) The adoption or failure to adopt any ordinance, resolution, order, regulation, or rule;
>
> \*\*\*
>
> (c) The issuance, denial, suspension, revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization;

KRS § 65.2003. Defendants argue that the enactment of the Ordinance, and the City and Mayor Armstrong's discretion in enforcing it to deny Plaintiffs a business license, are quasi-judicial and quasi-legislative functions any therefore cannot subject the City to liability. [DN 45-1 at 9 (citing KRS § 65.2003(3)).] The Court disagrees.

In *Ackermann Enterprises, Inc. v. City of Bellevue*, a sister district court provided a thorough analysis explaining why the immunity afforded by CALGA is confined to actions in tort. No. 14-207, 2016 WL 5171864, at *2–7 (E.D. Ky. Sept. 19, 2016) (Thapar, J.). The *Ackerman* court, in finding that CALGA did not immunize the City of Bellevue from actions in contract, explained that "the statute never so much as mentions contract actions. Yet the statute is hardly silent on the issue of when and to which cases it applies. In a section captioned 'application and construction,' the statute specifies that it applies to '[e]very *action in tort* against any local government.'" *Id.* at *3 (quoting KRS § 65.2001(1)). Moreover, the court explained, and this Court agrees, that "[t]he prefatory 'notwithstanding' merely signals that,

6

whatever other arrangements the statute might make with respect to municipal tort liability, the statute does not change the preexisting rule that cities are not liable *in tort* for the 'exercise of judicial, quasi-judicial, legislative or quasi-legislative authority.'" *Id.* at *4. Therefore, although "[s]ection 65.2003 might in isolation seem to apply broadly, the rest of the statute clearly cabins that section to actions in tort and tort alone." *Id.* at *3. *See also Madden v. City of Louisville*, No. 2003-CA-001162-MR, 2004 WL 1588279, at *4 (Ky. Ct. App. July 16, 2004) ("Reading CALGA as a whole, there are three factors which must be shown for the local governmental immunity available under KRS 65.2003 to apply: (1) the cause of action must be an action in tort . . . .").

Section 65.2000 of CALGA defines an "[a]ction in tort" as "any claim for money damages based upon negligence, medical malpractice, intentional tort, nuisance, products liability and strict liability, and also includes any wrongful death or survival-type action." KRS § 65.200(1). Just as the *Ackerman* court explained that this "definition section reinforces what common sense and plain meaning already suggest: that actions in contract are not actions in tort," *Ackerman*, 2016 WL 5171864, at *3, neither are claims of constitutional violations. Accordingly, CALGA does not immunize the City from liability in this action.

## B. Wombles' Fourteenth Amendment Claims

Both Defendants and Plaintiffs have moved for summary judgment on Wombles' claim that the Ordinance is unconstitutional under the Fourteenth Amendment.[2] [DN 45; DN 46.] Specifically, Wombles alleges that the Ordinance, by operating to deny business licenses to individuals convicted of felonies, is unconstitutional under the Equal Protection Clause of

---

[2] Though Defendants styled this portion of their motion both as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) and as one for summary judgment under Rule 56 [DN 45-1 at 9], seeing no practical difference in the required analysis regarding the facial constitutionality of the Ordinance, the Court will treat Defendants' motion as to this claim as one for summary judgment.

7

Fourteenth Amendment. [DN 1 at 7; DN 50 at 4–5.] Though Wombles does not characterize his challenge as either facial or as-applied, Wombles makes no arguments that, under the specific facts of this case, the Ordinance as applied to him specifically is unconstitutional. Accordingly, the Court interprets his arguments as constituting a facial challenge to the constitutionality of the Ordinance; that is, "an effort 'to invalidate the law in each of its applications, to take the law off the books completely.'" *Speet v. Schuette*, 726 F.3d 867, 871–72 (6th Cir. 2013) (quoting *Connection Distrib. Co. v. Holder,* 557 F.3d 321, 335 (6th Cir.2009) (en banc)).

"Generally, to 'succeed in a typical facial attack,' a plaintiff must establish 'that no set of circumstances exists under which [the statute] would be valid.'" *Id.* (quoting *United States v. Stevens,* 559 U.S. 460, 472 (2010)). Alternatively, "a plaintiff would have to establish that 'the statute lacks any 'plainly legitimate sweep [.]'' " *Id.* (quoting *Stevens*, 559 U.S. at 472). "Sustaining a facial attack to the constitutionality of a state law [or local ordinance] . . . is momentous and consequential. It is an 'exceptional remedy.'" *Speet*, 726 F.3d at 872 (quoting *Carey v. Wolnitzek,* 614 F.3d 189, 201 (6th Cir. 2010)).

Under a rational basis standard of scrutiny, which the parties agree applies to this claim, "a classification 'must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *E. Brooks Books, Inc. v. Shelby Cty., Tenn.*, 588 F.3d 360, 364 (6th Cir. 2009) (quoting *Richland Bookmart, Inc. v. Nichols*, 278 F.3d 570, 576 (6th Cir. 2002)). "[A] law will be sustained if it can be said to advance a legitimate government interest, even if the law seems unwise or works to the disadvantage of a particular group, or if the rationale for it seems tenuous." *Id.* (quoting *Romer v. Evans*, 517 U.S. 620, 632 (1996)). Once a state has identified a legitimate government interest in making a certain classification, "[t]o withstand constitutional review, the classification simply

8

must be rationally related to the goal or purpose of the classification. *Breck v. State of Mich.*, 203 F.3d 392, 395 (6th Cir. 2000) (citing *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981)).

Defendants argue that the Ordinance survives rational basis scrutiny because it "is clearly designed to guide the City's decision makers in exercising their discretionary functions regarding the issuance of business licenses and is rationally related to a legitimate state interest, i.e. the protection of consumers of the citizenry who might be customers of a general retail establishment." [DN 45-1 at 13.] Though Plaintiffs concede that the City's "interest in supervising and regulating certain business activities and operations is legitimate," Plaintiffs contend that the many alleged overinclusive aspects of the Ordinance demonstrate that it is not rationally related to serving this valid interest. [*Id.* at 6; 8.]

Plaintiffs argue that Ordinance fails rational basis scrutiny because it is overbroad[3] and overinclusive. [DN 46-1 at 6.] Specifically, Plaintiffs assert that the statute covers too many individuals in that it 1) applies to both misdemeanor and felony offenses, 2) applies to all types of businesses rather than a specific type of business, 3) affords the City too much discretion in determining what constitutes "tangible evidence" of a crime of "moral turpitude," 4) gives no consideration to the amount of time that has passed since an applicant's criminal conviction, and 5) fails to consider various factors such as rehabilitation, age of conviction, nature of the crime, and the degree of the applicant's participation in the crime of conviction. [*Id.* at 6–9; DN 50 at 5.]

---

[3] Though Plaintiffs use the term "overbroad," in challenging the Ordinance, the Court notes that this challenge is primarily reserved to the First Amendment free speech context. *See J.L. Spoons, Inc. v. Dragani*, 538 F.3d 379, 383 (6th Cir. 2008) ("The overbreadth doctrine prohibits the government from proscribing a 'substantial' amount of constitutionally protected speech judged in relation to the statute's plainly legitimate sweep.") The Court therefore construes Plaintiffs' argument as one of overinclusivity.

Plaintiffs cite two cases in which courts upheld licensing restrictions on individuals with criminal convictions and attempt to distinguish them from the Ordinance at issue in this case. First, Plaintiffs cite *Darks v. City of Cincinnati*, in which the Sixth Circuit upheld the city's practice of denying licenses to operate dance halls to individuals with felony convictions pursuant to a provision requiring "that licenses shall be issued only to 'reputable person[s] of good moral character.'" 745 F.2d 1040, 1042–45 (6th Cir. 1984). The *Darks* court, applying rational basis review to the plaintiff's Equal Protection challenge, first noted that "case law clearly indicates that at least some purposes will entitle a state or its subdivision to separately classify those convicted of a felony." *Id.* at 1043. While the court acknowledged that the dance hall provision at issue in *Darks* was distinct from case law involving prohibitions on felons holding union offices, selling and receiving firearms, and obtaining private detective and security licenses, the court noted that those "cases all involve activities in which the state has a particularly strong interest or need to protect the public from those with criminal propensities. A dance hall license would seem to involve the same concerns, although possibly not to the same degree." *Id.* (collecting cases). Rather, the court analogized the case to one upholding the denial of licenses to operate a pool hall to an individual with assault and battery convictions. *Id.* (citing *Flanagan v. Town of Petersburg*, 150 S.E. 382, 382 (1929)).

The *Darks* court further distinguished its case from those in which "district courts struck down statutes denying *any* form of civil service employment to convicted felons." *Id.* (citing *Kindem v. City of Alameda*, 502 F. Supp. 1108 (N.D. Cal. 1980) (prohibiting all municipal employment of individuals with felony convictions); *Butts v. Nichols,* 381 F. Supp. 573 (S.D. Iowa 1974) (prohibiting employment of individuals with felony convictions in civil service positions in Iowa)). In contrast, the court noted that Cincinnati's practice "only restricts felons

from receiving one type of license, which the city has reason to restrict to those of good character." *Id.* As a result, the court agreed that "the city could rationally conclude that denying dance hall licenses to felons would further the city's legitimate purpose of insuring that dance halls are operated by persons of integrity with respect for the law." *Id.*

Second, Plaintiff cites *Heller v. Ross*, in which a Michigan district court, relying on *Darks*, upheld a licensing statute in the Michigan Insurance Code that prohibited granting resident insurance producer licenses to individuals who had been convicted of a felony. 682 F. Supp. 2d 797 (E.D. Mich. 2010). In *Heller*, the plaintiff argued, in part, that the licensing statute was overinclusive because it prohibited granting licenses to all convicted felons regardless of the nature of the offense. *Id.* at 804. The court rejected this argument, explaining that, contrary to a "blanket ban" on licenses to all felons, the licensing statute only operated to deny licenses to resident insurance producers. *Id.* at 805 (citing *Darks,* 745 F.2d at 1043 ("The practice questioned here, however, only restricts felons from receiving one type of license . . . .")).

The plaintiff further argued that the statute was both over and underinclusive by distinguishing between felony convictions, which presented a bar to obtaining license, and misdemeanor convictions, which did not. *Id.* at 806 (citing, e.g., *Kindem*, 502 F. Supp. at 1112 ("[W]hereas a felony tax evader is denied a janitorship, . . . a person actually convicted of misdemeanor assault or theft, is not automatically precluded from the job . . . The distinction thus drawn between ex-felons and nonfelons is not rationally related to any legitimate state interests.")). The court again rejected this challenge, reasoning that, "[f]ollowing *Darks,* the Court surmises that the Sixth Circuit would not require Michigan to accord equal treatment to felons and misdemeanants within its professional licensing scheme." *Id.*

Plaintiffs argues that the Ordinance at issue in this case is "much broader" than those upheld in *Darks* and *Heller* and therefore that, unlike in those cases, it must be struck down. [*See* DN 46-1 at 7.] To the contrary, the City's Ordinance is, in a crucial respect, narrower than the provisions upheld in those cases. Specifically, the Ordinance does not operate as a blanket prohibition on business licenses for *all* felons or all misdemeanants; rather, it applies only to business licenses for individuals "convicted of a crime o[f] moral turpitude." Mt. Washington, KY., Code of Ordinances § 110.03(B)(1). This is in contrast to *Darks* and *Heller*, which both involved provisions preventing *all* felons from obtaining the license at issue, regardless of the nature of the individual's crime of conviction. *Darks*, 745 F.2d at 1042; *Heller*, 682 F. Supp. 2d at 804. That the Ordinance does not define "moral turpitude," or "tangible evidence," as Plaintiff argues, does not render it unconstitutional as giving the City "too much discretion." [DN 46-1 at 8.] Rather, this is precisely the type of discretion to which courts must defer under rational basis review of Fourteenth Amendment claims. *See Borman's, Inc. v. Michigan Prop. & Cas. Guar. Ass'n*, 925 F.2d 160, 162 (6th Cir. 1991) (quoting *McGowan v. State of Md.*, 366 U.S. 420, 425 (1961) ("[T]he fourteenth amendment permits the State a wide scope of discretion in enacting laws which affect some groups of citizens differently than others.")

Moreover, that fact that the law extends to both felony and misdemeanor offenses actually appears to cut *against* Plaintiffs' argument as to overinclusivity, rather than in favor of it, as Plaintiffs suggest. [DN 46 at 6–7.] As the plaintiff in *Heller* argued, some courts have found that provisions that apply to felony but not misdemeanor offenses can actually *fail* to include individuals whose crimes may be relevant to their fitness to perform a particular job. *Heller*, 682 F. Supp. 2d at 806 (citing *Kindem*, 502 F. Supp. at 1112; *Smith v. Fussenich*, 440 F. Supp. 1077, 1078–79 (D. Conn. 1977); *Butts*, 381 F. Supp. at 581 ("[T]he statute is . . . under

12

inclusive: . . . misdemeanants convicted of crimes indicating a lack of probity suffer no disqualification [under the statute].")) The Ordinance in this case makes no such distinction.

Although Plaintiff is correct that the Ordinance does not take into consideration the time that has passed since an applicant's criminal conviction occurred, the likelihood of rehabilitation, or the age of conviction, [DN 46-1 at 8–9], the provisions upheld in *Darks* and *Heller* also did not give any consideration to these factors. The Court is therefore persuaded that the Sixth Circuit does not require such tailoring in order to uphold licensing provisions under rational basis review. *See Darks*, 745 F.2d at 1042 ("[I]t is not contested, that it is the city's uniform practice to apply this provision by denying a license to any person with a felony record."); *Heller*, 682 F. Supp. 2d at 804 (Rejecting the argument that "the Licensing Statute is facially overinclusive because it denies a [license] to *any* convicted felon, without regard for the nature of the underlying offense.")

Nor does the Court find that the Ordinance goes so far as create "an occupational ban in that it excludes too many individuals from employment opportunities," as Plaintiffs contend. [DN 46-1 at 7.] According to Plaintiffs, such occupational bans "are valid only 'if there is a reasonable fit between the disqualifying convictions and the jobs in question.'" [*Id.* (quoting Miriam J. Aukerman, *The Somewhat Suspect Class: Towards a Constitutional Framework for Evaluating Occupational Restrictions Affecting People with Criminal Records*, 7 J. L. Society 18, 41 (2005)).] In support of this argument, Plaintiffs argue that this case is analogous to *Kindem v. City of Alameda*, 502 F. Supp. 1108, and *Butts v. Nichols*, 381 F. Supp. 573, in which courts struck down complete bans on the employment of convicted felons in municipal and state employment, respectively. As an initial matter, the *Darks* court distinguished both *Kindem* and

13

*Butts*, explaining that Cincinnati's policy "only restricts felons from receiving one type of license, which the city has reason to restrict to those of good character." *Darks*, 745 F.2d at 1043.

Those cases are similarly distinguishable here. Although the Ordinance here does apply to all business licenses, which Plaintiffs argue makes it comparable to the total bans in *Kindem* and *Butts*, the Ordinance only restricts the granting of licenses based on *certain types* of criminal convictions; that is, crimes of moral turpitude. The Court therefore agrees, as Defendants argue, that its Ordinance is not an "'across the board' prohibition of issuing business licenses to those convicted of misdemeanors, or felonies . . ." as was the situation in those cases. [DN 49 at 6.] Moreover, the Court finds, as did the *Heller* court, that, "unlike other jurisdictions, the Sixth Circuit has not required that the statute in question articulate a narrowly-tailored link between the occupation at issue and specific disqualifying offenses." *Heller*, 682 F. Supp. 2d at 805 (rejecting *Auckerman*, *supra*). Therefore, the fact that the Ordinance applies to all business licenses does not render it insufficiently related to the City's interest in protecting its citizens and supervising and regulating businesses.

Finally, even if Plaintiffs are correct that the Ordinance is, in some respects, overinclusive, this does not defeat rational basis scrutiny. As the Sixth Circuit has explained, "[r]ational basis scrutiny of an equal protection challenge tolerates some imprecision in classifying otherwise similarly situated people where a state has determined that some distinction is warranted." *Breck*, 203 F.3d at 396 (citing *Gregory v. Ashcroft*, 501 U.S. 452, 473 (1991)). Thus, "[e]ven if the classification involved here is to some extent both underinclusive and overinclusive, and hence the line drawn by [the City] imperfect, it is nevertheless the rule that in a case like this 'perfection is by no means required.'" *Id.* at 396–97 (quoting *Vance v. Bradley*, 440 U.S. 93, 108 (1979)). This remains true even though "some classifications have unnecessary

and harsh results." *Id.* at 397 (citing *Mathews v. Diaz,* 426 U.S. 67 (1976)). Though Plaintiffs may raise valid policy concerns, the Court's obligation under rational basis scrutiny is not to question the policy implications of the Ordinance, but rather to determine whether "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *E. Brooks Books*, 588 F.3d at 364 (quoting *Richland Bookmart*, 278 F.3d at 576).

Following the Sixth Circuit's guidance in *Darks*, the Court, though reluctantly, finds that the City could rationally conclude that restricting the grant of business licenses to individuals with criminal convictions involving crimes of moral turpitude could "rationally serve[] the City's legitimate state interest in protecting the consuming public from unscrupulous merchants." [DN 49 at 6.] Accordingly, the Court finds that Plaintiffs have not carried their "burden . . . to show that there is no rational connection between the enactment and a legitimate government interest." *Puckett v. Lexington–Fayette Urban Cty. Gov't*, 833 F.3d 590, 608 (6th Cir. 2016) (quoting *Sheffield v. City of Fort Thomas, Ky.*, 620 F.3d 596, 613 (6th Cir. 2010)). For these reasons, Defendants' motion for summary judgment with respect to Wombles' claim that the Ordinance is unconstitutional under the Fourteenth Amendment is granted and Plaintiffs' motion for partial summary judgment as to that claim is denied.

### C. Almon's First and Fourteenth Amendment Claims

Defendants have also moved for summary judgment on Almon's First and Fourteenth Amendment claims. [DN 45.] First, Wombles claims that his First and Fourteenth Amendment rights were violated when, on the basis of the Ordinance, he was denied a business license because of his association with Wombles. [DN 1 at 7–8.] Second, Wombles claims that his Fourteenth Amendment rights were violated because, on the basis of the Ordinance, he was denied a business license on the basis of his sexual orientation. [*Id.* at 6–8; DN 57 at 3.] Because

15

the Ordinance, on its face, is silent as to applicants' associations with other individuals and as to applicants' sexual orientations, the Court construes Almon's "fact-specific claims" as as-applied challenges. *Warshak v. United States*, 532 F.3d 521, 530 (6th Cir. 2008). That is, claims that the Ordinance "is unconstitutional as enforced against the plaintiff[] before the court." *Speet*, 726 F.3d at 872.

1. Freedom of Association

Though Plaintiffs argue that Defendants' denial of Almon's business license application "violated a clearly established law: Almon's right to Freedom of Association under the First Amendment to the United States Constitution," [DN 50 at 6], the Court believes Plaintiffs have confused the "two analytically distinct forms of freedom of association: freedom of intimate association, protected under the Substantive Due Process component of the Fourteenth Amendment, and freedom of expressive association, protected under the Freedom of Speech Clause of the First Amendment." *Akers v. McGinnis*, 352 F.3d 1030, 1035 (6th Cir. 2003) (citing *Roberts v. United States Jaycees,* 468 U.S. 609, 617–18 (1984)). "With respect to expressive association, the Supreme Court 'has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.'" *Anderson v. City of LaVergne*, 371 F.3d 879, 881 (6th Cir. 2004) (quoting *Roberts,* 468 U.S. at 618). With regard to "intimate association, the Supreme Court 'has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme.'" *Id.* (quoting *Roberts,* 468 U.S. at 617–18.)

16

Although Plaintiffs repeatedly reference the First Amendment right to freedom of association, it is clear that Almon "does not assert that the City denied his right to expressive association. Instead, this case involves the City's alleged intrusion into [Almon's] personal relationship with [Wombles] in violation of his right of intimate association." *Id.* Indeed, in their response, Plaintiffs discuss "the freedom to enter into and carry on certain intimate or private relationships" [DN 50 at 6 (citing *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987))], and Almon's "highly personal, same-sex relationship" with Wombles. [*Id.* at 6–7.] Accordingly, the Court finds that Almon alleges violations of his right to "freedom of intimate association, a privacy interest derived from the Due Process Clause of the Fourteenth Amendment . . . " *Anderson*, 371 F.3d at 881.

The Sixth Circuit has explained that, "in addition to marriage, courts have recognized both personal friendships and non-marital romantic relationships as the types of 'highly personal relationships' within the ambit of intimate associations" protected under the Fourteenth Amendment *Id.* at 882 (citing *Akers,* 352 F.3d at 1039–40). Here, it is undisputed that, at the time of the events giving rise to this action, Wombles and Almon were in a same-sex relationship, lived together, and operated Best Deals together. [DN 1 at 4; DN 45-1 at 2.] Therefore, the Court finds that Plaintiffs' relationship with one another was an intimate association. The question for the Court then becomes what level of scrutiny the Court must apply in analyzing Almon's claim of violations of his right to freedom of intimate association.

Plaintiffs allege in their Complaint that intermediate scrutiny applies to Almon's claims of First and Fourteenth Amendment violations "based on gender." [DN 1 at 8–9.] Defendants make no arguments and cite no case law related to the proper standard of review in their motion or reply, nor do Plaintiffs make any attempt to defend this assertion in their response. [*See* DN

17

45; DN 50]. Though both parties have failed to argue this point, the Court must note that it is incorrect. Sixth Circuit precedent is clear that "[a] 'direct and substantial interference' with intimate associations is subject to strict scrutiny, while lesser interferences are subject to rational basis review." *Anderson*, 371 F.3d at 882. The Sixth Circuit

> has developed a general rule that we will find "direct and substantial" burdens on intimate associations "only where a large portion of those affected by the rule are absolutely or largely prevented from [forming intimate associations], or where those affected by the rule are absolutely or largely prevented from [forming intimate associations] with a large portion of the otherwise eligible population of [people with whom they could form intimate associations]."

*Id.* (citing *Akers*, 353 F.3d at 1040). Applying this standard here, the Court cannot say that Defendants' decision to deny Almon's business license application operated as a "direct and substantial" burden on his right to intimate association with Wombles. "Because [Almon] continued to enjoy the ability to form intimate associations with [Wombles], the [Ordinance] is subject to rational basis review." *Id.*

Applying rational basis review here, the Court finds that Defendants' decision to deny Almon's application for a business license based on his association with Wombles did not violate the Constitution. In their motion for summary judgment, Defendants admit that they denied Almon's business license application due to his "association" with Wombles, but not due to his *intimate* association. [DN 45-1 at 15.] Rather, Defendants contend that "Almon's application was denied because of his 'association' with Wombles, after it became clear Wombles was trying to circumvent the Ordinance by transferring ownership of Best Deals to Almon, with the intention of operating the store as originally planned." [*Id.* at 3–4.] In other words, "Almon was known to be associated with Wombles in a joint enterprise to operate Best Deals, and Wombles had an unfavorable criminal history." [*Id.* at 15.] This explanation, "whether subjectively true or not—is presumed valid and rationally related to a legitimate public interest," *Ondo v. City of Cleveland*,

18

795 F.3d 597, 610 (6th Cir. 2015), and Plaintiffs have offered no evidence based on which the Court could find this presumption rebutted or even that a genuine dispute as to this fact exists for trial. Accordingly, the Court cannot find that Defendants violated Almon's Fourteenth Amendment right to freedom of intimate association, and Defendants are entitled to summary judgment on this claim.

### 2. Sexual Orientation

The Court must also apply rational basis review to Almon's claim that Defendants violated the Fourteenth Amendment because they applied the Ordinance to deny him a business license on the basis of his sexual orientation. "An equal protection claim is subject to rational basis review unless it involves infringement of a fundamental right or application to a suspect class." *Bowman v. United States*, 564 F.3d 765, 772 (6th Cir. 2008) (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440 (1985)). The Sixth Circuit recently stated that it will continue to "appl[y] rational-basis review to state actions involving sexual orientation." *Ondo*, 795 F.3d at 609.

As the Court already concluded above, Defendants' application of the Ordinance to Almon survives rational basis scrutiny. Plaintiffs have failed to submit any evidence to challenge Defendants' stated justification for denying Almon's application, and the Court agrees with Defendants that "there is no evidence in the record to support Almon's allegation that he was denied a license due to his sexual orientation." [DN 45-1 at 15.] Accordingly, summary judgment in favor of Defendants on this claim is also granted.

### D. Claims Against Mayor Barry Armstrong in his Official and Individual Capacities

Defendants further argued in their motion for summary judgment that the official capacity claims against Mayor Armstrong should be dismissed as redundant and that Mayor

19

Armstrong is entitled to qualified immunity on the individual capacity claims. [*Id.* at 16–19.] However, as the Court has determined that Defendants are entitled to summary judgment on the merits of each of Plaintiffs' claims, the Court need not reach these issues. *See Jones v. Perry Cty. Fiscal Court*, 185 F. Supp. 3d 947, 965 (E.D. Ky. 2016) ("[T]he Court need not address whether [defendant] is entitled to qualified immunity because summary judgment is appropriate on the merits of Jones' claim.")

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Defendants' Motion for Summary Judgment [DN 45] is **GRANTED**.
2. Plaintiffs' Motion for Partial Summary Judgment [DN 46] is **DENIED**.
3. Plaintiffs' Motion *in Limine* [DN 62] is **DENIED AS MOOT**.

The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

cc: Counsel